## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**PRECIOUS MOMENTS, INC.**
    **Plaintiff**

                                      **Civil No. 97-1635 (JAG)**

    **v.**

**LA INFANTIL, INC., ET AL**
    **Defendants**

---

### MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Precious Moments, Inc. filed its complaint on April 25, 1997, alleging violations of copyright and trademark laws pursuant to 17 U.S.C. §§ 101-803 and 15 U.S.C. §§ 1051-1127 (**Docket No. 1**). Plaintiff also brings a supplemental action for claims arising under Puerto Rico law pursuant to P.R. Laws Ann. tit. 10, §§ 171-171y.

Precious Moments, Inc. is engaged in the business of licensing the "Precious Moments" trademark and artwork to licensees who manufacture and distribute numerous products, including but not limited to fabrics, baby bedding and baby accessories. Defendant, La Infantil, Inc. is a retail store which sells baby products, including furniture, bedding, clothing and accessories. Certain bedding sold by La Infantil, Inc. is manufactured by Teresita Martín Sewing Service, said products comprised of Precious Moments fabrics. Co-defendant Mueblería Andalucía, Inc. is a furniture store which sells baby bedding purchased from La Infantil, Inc.

Defendant Mueblería Andalucía, Inc., moves for summary judgment against Precious Moments, Inc. on the basis that there is no copyright infringement and, alternatively, that if there was copyright infringement it is an innocent infringer (**Docket No. 173**). Precious Moments, Inc. also moves for summary judgment against the defendants on the basis that

Civil No. 97-1635(JAG) _____ Page No. 2

it is the owner of certain copyrighted works which defendants have used to prepare derivative

works without Precious Moments, Inc.'s authorization or license (**Docket No. 179**). Precious

Moments, Inc. filed no opposition to Mueblería Andalucía, Inc.'s motion for summary

judgment. However, it seeks summary judgment against Mueblería Andalucía, Inc. as well

as La Infantil, Inc. Both Mueblería Andalucía, Inc. and La Infantil, Inc. oppose Precious

Moment, Inc.'s motion for summary judgment (**Docket Nos. 192, 212**). Precious Moment,

Inc. and La Infantil have filed replies and sur-replies (**Docket Nos. 206, 228**) The case was

referred to the undersigned for a report and recommendation on all dispositive motions

(**Docket No. 215**).

## I.     Procedural Background

Subsequent to the filing of its complaint, Precious Moments, Inc. (PMI) moved the

Court for a preliminary injunction. An evidentiary hearing was held on June 26, 1997

(**Docket Nos. 6, 17, 22**). In its Opinion and Order the court noted that "[m]atters in this

case have boiled down to a single issue – whether La Infantil may, consistently with the

copyright, trademark and competition laws, use authentic, lawfully acquired Precious

Moments fabric to have baby bedding manufactured which it then sells to the public at the

La Infantil store" (**Docket No. 18**).

With regard to PMI's copyright infringement claim the Court queried "whether the

items manufactured by Teresita Martín Sewing Service from Precious Moments fabric are

"derivative works" infringing on Precious Moments' copyright". *Id.* The Court then

determined that the "necessary element of originality is absent from the items manufactured

for La Infantil from the Precious Moments fabric" and they "do not constitute 'derivative

works' infringing on Precious Moments' copyright". *Id.* Accordingly, the Court found that PMI had not carried its burden of showing a likelihood of success on the merits and denied the request for preliminary injunction as to copyright infringement.

Turning to the issue of trademark infringement and unfair competition, the Court determined that La Infantil had not made any false representations and appeared to have attempted to identify the sources of the products accurately, but found inadequate the notice used by La Infantil to prevent potential confusion as to PMI's sponsorship (or lack thereof) of the products. *Id.* The Court granted the preliminary injunction as to the trademark and unfair competition claims ordering La Infantil to modify the tags it used to identify products manufactured from Precious Moments fabrics. *Id.*

Dissatisfied with the Court's Opinion and Order, PMI filed a motion for reconsideration which was denied (**Docket No. 18, 31**). In its Opinion and Order denying the motion for reconsideration the Court clarified certain portions of its previous Opinion and Order in which it had ruled on the motion for preliminary injunction (**Docket No. 31**). Of relevance to this Report and Recommendation is the Court's discussion of the requirements of originality in a derivative work as statutorily set forth in 17 U.S.C. §§ 101, 102(a). The Court determined that a derivative work must show the same degree of originality that is required for copyrightability. *Id.*

Next, La Infantil, Inc. ("La Infantil") filed a third party complaint against its insurer, Seguros Triple-S, Inc. ("Triple-S") (**Docket No. 47**). La Infantil moved for summary judgment against Triple-S which the Court granted finding that Triple-S had breached its duty to defend La Infantil (**Docket Nos. 113, 132**). PMI moved to amend its complaint to

add defendants TM Services, Inc. and Teresita Martín Sánchez and leave was granted by the

Court (**Docket Nos. 134, 239**).    The amended complaint was filed on April 5, 2002,

subsequent to the filing of the pending dispositive motions (**Docket No. 240**).

As discussed herein above, defendant Mueblería Andalucía, Inc. ("Mueblería

Andalucía") and plaintiff PMI move for summary judgment (**Docket Nos. 173, 179**). In its

reply, PMI asks the court to disregard the affidavit of Teresita Martín filed with La Infantil's

response (**Docket Nos. 192,195, 206**).    PMI asserts that Martín's affidavit attempts to

change her previous depositional testimony. The undersigned has reviewed both the excerpts

of Martín's deposition provided to the Court and her affidavit and denies PMI's request. The

affidavit will be considered.

**II.    Factual Scenario**

PMI  is the owner of all the rights, title and interest of a number of  copyrighted

artworks known as Precious Moments Artwork and Designs, created by Samuel J. Butcher,

and assigned to PMI in 1992 (**Docket No. 181**, Ex. 19).    Included in these works is a

sculpture entitled"Jesus Loves Me - Girl with Bunny". *Id.*

Teresita Martín ("Martín") is married to José Prieto ("Prieto") (**Docket No. 181,** Ex.

4). Martín and Prieto are the sole members of the board of directors of La Infantil and are

also stockholder of La Infantil (**Docket No. 181**, Exs. 5, 7).  They are also the sole members

of the board of directors of TM Sewing Services, Inc. and are also stockholders of TM Sewing

Services, Inc. (**Docket No. 181**, Exs. 6, 9). Martín is the treasurer of La Infantil and Prieto

is the treasurer and president of TM Sewing Services, Inc. and the president of  La Infantil

(**Docket No. 181**, Exs. 2, 3, 7).

Between 1993 and February 1996 La Infantil was in the business of manufacturing baby products and selling them wholesale (**Docket No. 181**, Ex. 10). Until 1996 La Infantil used fabric which had  Precious Moments design printed on it (**Docket No. 181**, Ex. 12). Currently La Infantil sells retail, but it sold wholesale prior to the time TM Sewing Services, Inc opened (**Docket No. 181**, Ex. 10). TM Sewing Services, Inc. was incorporated in 1996 and since that time it has manufactured products with fabric imprinted with Precious Moments images (**Docket No. 181**, Exs. 9, 15).

La Infantil purchased fabric with Precious Moments design from local wholesalers and retail fabric suppliers in Puerto Rico, including Quiltex Company, Inc.  (**Docket No. 11**; **Docket No. 193**, Martín Aff.). The fabric is made by The Spectrix Co., a licensee of PMI, and is available for purchase by the general public from stores such as the Capri chain of fabric stores and Wal-Mart (**Docket No. 195**, Exs. 1, 2; **Docket No. 228**, Ex.). After purchasing the fabric, it was sewn into different products such as baby bedding, diaper holders, diaper bags and hampers which were sold to other businesses (**Docket No. 181**, Ex. 13). The fabric was sewn into anything that a client requested such as bed-crib coordinators and diaper bags (**Docket No. 191**, Ex. 12). No pattern was used, but the fabric was cut according to the measurements of the bed-crib. *Id*. at Ex. 14. Martín  would choose the material and cut it according to her taste or according to the client's request. *Id*. At times clients would make specific requests as to color and pattern. *Id*. For example, requesting a ruffle in blue or pink was dependent upon the baby's sex (**Docket No. 193**, Martín Aff.). The design of the coordinates was Martín's idea **Docket No. 191**, Ex. 16).

The Court was provided with certain items at issue such as portable diaper bags, headboard covers, diaper holders with bow tie, and bedding sets consisting of a fitted comforter, pillow, headboard cover, and bumper pads(**Docket No. 235**).  Depending on the item, coordinating ruffles, quilt batting, fabric lining, satin tie-ons, and supporting cardboard were added to the item.  Inspection of the sewn products revealed no alteration to the Precious Moment artwork imprinted on the fabric.

Mueblería Andalucía purchased Precious Moments' products with a TM Sewing Services label from Teresita Martín and sold those products in its store (**Docket No. 173**, Material Facts 3, 4).    Additionally,  Mueblería Andalucía has sold products it purchased from La Infantil and TM Sewing Services, Inc. (**Docket No. 181**, Ex. 22).  It believes that Teresita Martín is authorized to market and sell Precious Moments products manufactured by PMI's authorized licensees (**Docket No. 173**, Material Fact 5).  Mueblería Andalucía believes that Teresita Martín purchased fabrics from wholesales and retailers who were duly authorized to sell the original fabrics without restrictions (**Docket No. 173**, Material Fact 6).

## III.    Analysis

Mueblería Andalucía moves for summary judgment against PMI on the bases that the product it sold was not a derivative work as defined at 17 U.S.C. § 101 and it is protected by the first sale doctrine.  PMI moves for summary judgment against La Infantil, Mueblería Andalucía, TM Sewing Services, Inc. and Teresita Martín[1] on the bases that it is the owner

___

[1]TM Sewing Services, Inc. and Teresita Martín were added as defendants in the amended complaint, but leave to amend was not granted until after the filing of PMI's motion for summary judgment. As of the date of this Report and Recommendation, defendants TM Sewing Services, Inc. and Teresita Martín had yet to be served with summons and complaint.

of certain copyrighted art works which the defendants have used to prepare derivative works. PMI interprets the Court's Opinion and Order filed July 29, 1997, (**Docket No. 18**) as stating that the only remaining issue is "whether the accused products have the minimum degree of 'originality' to constitute derivative works".[2]  PMI further asserts that it is entitled to summary judgment against Mueblería Andalucía on the basis that in its motion for summary judgment Mueblería Andalucía admitted that it is an innocent infringer. As to this last contention, PMI misconstrues Mueblería Andalucía's argument. What Mueblería Andalucía actually stated was: "***If*** there has been any infringement to the copyright law by Teresita Martín, La Infantil, Inc. and/or TM Sewing Services, Inc., Mueblería Andalucía is an innocent infringer" (**Docket No. 173**, Material Fact No. 16) (emphasis added).  Mueblería Andalucía's statement that it is an innocent infringer is clearly conditioned on a finding by the Court of copyright infringement by Teresita Martín, La Infantil, Inc. and/or TM Sewing Services, Inc. This Magistrate-Judge does not agree with PMI's argument that Mueblería Andalucía made an admission that it is in innocent infringer.

In its motion for summary judgment PMI asserted that La Infantil "in some cases . . . sometimes painted over portions of the Precious Moments designs with fabric paints" (**Docket No. 179**).  Subsequently PMI moved the court to strike said language as it did not intend to include same in the motion.  Said motion was noted and the Court granted and the request to strike such allegations (**Docket Nos. 198, 239**). Accordingly, the undersigned will not consider any argument which addresses said phrase.  More, the undersigned considers

---

[2]The undersigned does not necessarily agree with this interpretation.  The Opinion and Order at issue found that the products at issue were not derivative works as the  necessarily element of originality was absent from said items and denied injunctive relief on that basis.

PMI to have conceded the issue that the fabrics at issue are authentic and were lawfully acquired Precious Moments fabrics.

## A.    Legal Standard

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega-Rodríguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997) (*citing Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). A fact is material, if under applicable substantive law, it may affect the result of the case and a dispute is genuine only if there is conflicting evidence that requires a trial to resolve the discrepancy. *See Ortega-Rosario v. Alvarado-Ortiz*, 917 F.2d 71, 73 (1st Cir.1990). A material issue is trial-worthy if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247, 248 (1986); *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

Once the movant has presented probative evidence establishing its entitlement to judgment, the party opposing the motion must set forth specific facts demonstrating that there is a material and genuine issue for trial. *See Ortega-Rosario v. Alvarado-Ortiz*, 917 F.2d 71, 73 (1st Cir.1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To defeat a motion

for summary judgment, "the nonmoving party must demonstrate the existence of a trial-worthy issue as to some material fact." *Cortés Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Pagano v. Frank*, 983 F.2d at 347. The non-movant must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether summary judgment is warranted, the court views the facts alleged in the light most favorable to the non-moving party and must indulge all inferences in favor of that party. *See Rossy v. Roche Prods., Inc.*, 880 F.2d 621, 624 (1st Cir.1989).

In the case at bar, both plaintiff PMI and defendant Mueblería Andalucía have filed motions for summary judgment. "Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se. *See Wiley v. American Greetings Corp.*, 762 F.2d 139, 141 (1st Cir.1985). Rather, cross motions require the Court to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. *See id. Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir.1996).

**B.     Copyright**

The plaintiff in a copyright infringement case bears the burden of proving "'(1) ownership of a valid copyright, and (2) [unauthorized] copying of constituent elements of the work that are original.'" *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir.1995), *aff'd by an equally divided court*, 516 U.S. 233 (1996) (*quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *see also Saenger Organization, Inc. v.*

*Nationwide Ins. Licensing Assocs., Inc.*, 119 F.3d 55, 59 (1st Cir. 1997); *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1513 (1st Cir.1996). A copyright holder has the exclusive rights[3] to do and to authorize any of the following activities with the copyrighted work: reproduction, preparation of derivative works, distribution, performance and display. *See* 17 U.S.C. § 106. Any act that is inconsistent with a copyright holder's exclusive rights constitutes infringement. *See* 17 U.S.C. § 501(a); *Alvarez Guedes v. Marcano-Martínez*, 131 F.Supp.2d 272, 276 (D.P.R. 2001).

In the case at bar PMI contends that the defendants have prepared unauthorized derivative works based upon its Precious Moments copyright. PMI posits that it has met the first requisite for copyright infringement, inasmuch as it has presented a certificate of copyright registration for its claimed copyright and the defendants have not disputed PMI's exclusive right to the artwork[4] covered by the copyright. Indeed, in the case at bar the record

---

[3]The exclusive rights in copyrighted works are as follows:
Subject to sections 107 through 121, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.
17 U.S.C. § 106

[4] At issue is the use of Precious Moments fabric. It is well established that fabric designs constitute a form of "writings" entitled to copyright protection. *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991). In reviewing the record it appears that the majority of the copyrights held by PMI are for sculptures as opposed to fabric. Regardless, as copyright holder, PMI has the right to create derivative products, such as fabric. 17 U.S.C. § 106(2).

contains no proof or proffer of proof from defendants to rebut the presumption that the copyright is valid. *See Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991). As to the second element, PMI argues that the products at issue easily meet the minimal standard of creativity to constitute a derivative work.

## 1. Derivative Work

Mueblería Andalucía, in its motion for summary judgment, and La Infantil, in its opposition to PMI's motion for summary judgment, contend that they are protected by the "first sale" doctrine. Said doctrine, however, does not limit the exclusive rights of a copyright holder. Indeed, the copyright owner's right to distribute the work is limited by the "first sale" doctrine, which permits the owner of a legally acquired, lawfully made copy of a work to sell that particular copy without the consent of the copyright holder. 17 U.S.C. § 109(a)[5]. The first sale doctrine, however, limits only the distribution rights of the copyright owner; it does not limit the other exclusive rights enumerated in § 106, including the right to prepare derivative works. *Red Baron-Franklin Park, Inc. v. Taito Corp.*, 883 F.2d 275, 280 (4th Cir. 1989); *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1344 (9th Cir. 1988); *Accord Lee v. A.R.T. Co.*, 125 F.3d 580 (7th Cir. 1997).

Here, the issue to be resolved is whether the items manufactured by Teresita Martín Sewing Service from Precious Moment fabric are "derivative works" infringing on Precious Moments' copyright. PMI argues that defendants' unauthorized manufacture and/or sale of baby products featuring Precious Moments artwork violates PMI's exclusive right to create

---

[5]Section 109(a) provides in pertinent part, "Notwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorize by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord."

derivative works based upon its copyrighted artwork. Conversely, La Infantil argues that the

sewing of the products at issue does not meet even the lowest level of creativity and

originality required under copyright law.  It also contends that the sewing of the bedding

products is done without alteration of any kind to the artwork found on the Precious

Moments fabric.   Finally, La Infantil notes that it has not copied, altered or modified the

designs on the fabric in any way, but that it has made use of the fabric in its original form,

for its intended use.  Mueblería Andalucía's position also is that the products at issue are not

derivative works relying upon this Court's Opinion and Order denying the motion for

injunctive relief and *Lee v. A.R.T. Co.*, 125 F.3d 380 (7th Cir. 1997).

"A 'derivative work' is a work based upon one or more preexisting works, such as a

translation, musical arrangement, dramatization, fictionalization, motion picture version,

sound recording, art reproduction, abridgment, condensation, or any other form in which a

work may be recast, transformed, or adapted." 17 U.S.C. § 101. "A work consisting of editorial

revisions, annotations, elaborations, or other modifications which, as a whole, represent an

original work of authorship, is a 'derivative work'. *Id.*

Derivative works are explicitly included in the subject matter of copyright as defined

by the Copyright Act. 17 U.S.C. § 103.  However, to support a copyright the original aspects

of a derivative work must be more than trivial. *Durham Industries, Inc. v. Tomy Corp.,* 630

F.2d 905, 909  (2d Cir. 1980). Additionally,  the scope of protection afforded to a derivative

work must reflect the degree to which it relies on preexisting material and must not in any

way affect the scope of any copyright protection in that preexisting material. *Id.*  Thus, the

only aspects of a derivative work entitled to copyright protection are the non-trivial, original

features, if any, contributed by the author or creator of the derivative works. *Id.*

PMI asserts that in order to resolve the derivative works issue, the Court must

determine whether the products at issue satisfy the minimum levels of originality by

examining the samples provided to the Court. In its Opinion and Order filed on January 8,

1998, the Court held that "a derivative work must show the same degree of originality that

is required for copyrightability"[6] but did not hold that a derivative work must fulfill all of the

requirements for copyrightability (**Docket No. 31**, p. 3).    It further stated that "the line

between simply reselling a lawfully acquired copy of a work and creating an infringing

derivative work is not crossed by making any alteration, no matter how mundane, to the

original work." *Id.* at p. 4.    The Court pointed out that "some level of creativity must be

present in order to create an infringing derivative work". *Id.* at p. 4.    Finally and most

importantly, the Court held that the standard of originality of a derivative work is the same

standard of originality for copyrighting a work as described in *Feist Publ'ns, Inc. v. Rural Tel.*

*Serv. Co., Inc.,* 499 U.S. 340 (1991).    That standard is as follows:

> Original, as the term is used in copyright, means only that the
> work was independently created by the author (as opposed to
> copied from other works), and that it possesses at least some
> minimal degree of creativity.    To be sure, the requisite level of
> creativity is extremely low; even a slight amount will suffice. The
> vast majority of works make the grade quite easily, as they
> possess some create spark, "no matter how crude, humble or
> obvious" it might be.

*Feist,* 499 U.S. at 345.

_____

[6]The undersigned finds it unnecessary to detail the Court's analysis in this regard as it is found in its entirety in the Opinion and Order filed under **Docket No. 31.**

PMI argues that the products at issue not only possess the "faint trace of originality" but also exhibit "a distinguishable variation" from the original work.  More particularly, it argues that the products meet the minimal requirement for creativity, inasmuch as Martín and La Infantil took the copyrighted fabric, cut it into patterns and assembled it into goods. More so, since during the process defendants selected and organized other fabric colors and types to coordinate with the Precious Moments fabric along with adding trim and details, such as lace, ruffles and in some cases quilting the fabric.

PMI further argues that the level of creativity for the products at issue requires the exercise of selection, arrangement and creativity by Teresita Martín in designing and integrating the Precious Moments fabric with other components, in selecting the appropriate color of the components, and in selecting different embellishments and adornments.  PMI argues this process "completely transform[s] a piece of fabric into an artistic creation" (**Docket No. 179**, p. 10).  According to PMI, the foregoing clearly demonstrates that the creativity and originality of Martín, TM Sewing and La Infantil is "more than trivial" and exceeds the "minimal creativity" test sufficient for a determinative that the products are derivative works.

La Infantil, of course, disagrees with PMI's assertion to the effect that the products at issue constitute derivative work.  Its position is that there is no derivative work when the original artwork has not been changed or altered in any form during the mechanical process of sewing.  Indeed, it contends that the copyrighted work is the character or picture imprinted on the fabric and not the fabric or the resulting products made from the Precious Moments fabric.  Further, La Infantil argues that PMI has failed to demonstrate the existence of a

copyrightable element noting that a ruffle or trim has been added to what is essentially a utilitarian product, such as a pillow, comforter or diaper bag. La Infantil also notes that PMI has not brought forth any expert testimony as to the originality or copyrightability of the items produced as opposed to a product prepared by PMI or by any other individual purchasing fabric and sewing products for one's own personal use. La Infantil points out that it has not recast, adapted or transformed the artwork on the fabric nor has it sewn it into another medium of artistic expression. Rather, it has sewn the fabric into utilitarian goods.

La Infantil also argues that copyright protection is not available for utilitarian objects. As a result, if one separates the ruffles from the pillow made from Precious Moments fabric, the trimming would not attain the quality of originality to merit copyright protection but would continue to be a utilitarian object in itself. La Infantil argues that PMI has failed to prove the existence of the facts of originality, of intellectual production, of thought and conception. Finally, La Infantil contends that PMI has implicitly authorized the creation of goods with its Precious Moments fabrics by placing said fabric for commercial sale to consumers in the open market.

As previously discussed PMI also considers the articles at issue as "artistic creations". Granted, there is an artistic aspect to the articles, that being the Precious Moments design imprinted on the fabric,[7] said designs derived mainly from sculptures. *See* **Docket No. 191,**

---

[7]In a fabric copyright infringement case the Second Circuit noted that fabrics are generally classified as useful, referring to the Copyright Act of 1976 House Report as follows: "A two-dimensional painting, drawing, or graphic work is still capable of being identified as such when it is printed on or applied to utilitarian articles such as textile fabrics, wallpaper, containers, and the like." *Langman Fabrics v. Graff Californiawear, Inc.,* 160 F.3d 106, 114-115 (2d Cir. 1998). It held that fabric manufactured for the purpose of being made into clothing is a "useful article" for the purpose of the notice of copyright statutory provisions found at 17 U.S.C. § 401(b)(2). *Id.* at 115. The General Counsel of the Copyright Office agrees with this holding. *Langman Fabrics v. Graff Californiawear, Inc.,* 169 F.3d 782 (2d Cir. 1998).

Ex. 20.    Section 101 of the Copyright Act states that sculptural works of artistic craftsmanship receive copyright protection only

> insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article [ordinarily not copyrightable]. . . shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101.

Consequently, any aspects of the baby products at issue that are purely functional, utilitarian or mechanical, will not be given any copyright protection. *Id.;  see also Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1211 (9th Cir.1997).   Moreover, any artistic aspects of the baby products at issue  will also not receive copyright protection unless they can be identified separately from, and are capable of existing independently of, the utilitarian purpose of the baby products.  17 U.S.C. § 101; *see also Id.*  Accordingly, "[a]ny differences in appearance between a derivative work and the preexisting work which are driven primarily by a functional, utilitarian or mechanical purpose cannot be considered when seeking artistic differences for the purpose of originality." *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 853 F.Supp. 319, 322-23 (N.D. Cal. 1994). Therefore, the undersigned must determine whether the non-functional aspects of the baby products are original as that term is defined in *Feist.*

The undersigned has carefully examined the exhibits provided to the court.  Said examination reveals the fabric was cut into shapes and sewn into various baby products. The products sewn were baby pillows, bumper pads, diaper holders, diaper bags, fitted crib

blankets, dust ruffle, crib or bed headboard covers, and a hamper.  The Precious Moments artwork on the fabric was not altered in any fashion.  In most instances the Precious Moments fabric was lined with white fabric, although at times pink fabric lining was used. In certain products, such as the pillows and headboard covers, filling or batting was added. Additionally, at times a fabric ruffle in a coordinating color was added to the sewn product. For example, a pink, blue or green ruffle might be added to fabric which contained pink, blue or green as a dominant color.   Finally, thin satin ribbon was added to some products, apparently for use as tie-ons.

As *Feist* instructs, "choices as to the selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws." 499 U.S. at 348.  However, after examining the products at issue, the undersigned determines that there does not exist the requisite originality required.   First, the shape of the product is dictated by the measurements of the items where the sewn product will be used (i.e., the baby bed, the size of the diapers) or by the request of the client.   Clearly, there is no originality in measuring items used for a specific purpose nor in sewing products to the specifications of a client. Additionally, the selection of coordinating fabrics is dictated by the client, the sex of the baby, or the Precious Moments fabric.  Indeed, there is nothing original in the use of pink, blue, light green or yellow in baby products.  These colors are the norm.  Notably, the sewn products make no changes to the art design on the fabric. None.  Contrary to PMI's assertions there is no variation to the original work.  Finally, the undersigned cannot say PMI has met its burden of proving these products meet the *Feist* definition of "original (i.e.,

original means only that the work was independently created by the author (as opposed to copied from other works)). More so, as the baby products at issue are quite common. There is nothing in the record which indicates that the defendants independently created, as opposed to copying, the forms for the pillows, fitted blankets, diaper bags, bumper pads, diaper holders, ruffles and hampers.

Having thoroughly examined the products at issue (**Docket No. 235**, Ex. 1-12) and in accordance with copyright law, the undersigned determines that the products do not rise to the level of an original work required to be copyrightable.[8] Accordingly, the baby products at issue are not "derivative works" and as a matter of law cannot be found to violate the Copyright Act.

Mueblería Andalucía also moves for summary judgment on the basis that it is protected by the "first sale" doctrine. As the undersigned has determined that the baby products do not violate the Copyright Act, it must be determined whether Mueblería Andalucía interfered with PMI's exclusive right to distribute its copyrighted work. The undersigned finds that Mueblería Andalucía did not interfere with any such right.

The First Sale Doctrine "entitles the owner of a lawfully acquired copy of a copyrighted work to sell or dispose of the copy without authorization from the copyright holder". *See Green Book Int'l Corp. v. Inuity Corp.,* 2 F.Supp.2d 112, 116 n.1 (D. Mass. 1998). PMI initiated the sale of its fabric which was lawfully sold through its licensees. La Infantil legally acquired the fabric and resold it to Mueblería Andalucía who also resold the fabric.

---

[8]Photographs of items submitted for examinations were filed on February 22, 2002, under **Docket No. 235**.

The fabric was simply resold although in a different form, pursuant to the right to sell a legally acquired work. 17 U.S.C. § 109. The resale is permissible under the Copyright Act and Mueblería Andalucía is entitled to the protection of the "first sale" doctrine.

Accordingly, based upon the foregoing analysis the undersigned **RECOMMENDS** that the motion for summary judgment of Mueblería Andalucía be **GRANTED (Docket No. 173)** and that the Motion for Summary Judgment of Precious Moments, Inc. be **DENIED (Docket No. 179)**.

### 2. Fair Use

In its opposition to PMI's motion for summary judgment, La Infantil appears to raise the issue of fair use when it argues that PMI placed the Precious Moments fabric for sale in the open market and that La Infantil made use of the fabric in its original form, for its intended use. La Infantil argues that by placing fabric for general purchase at local department and fabric stores its use is promoted by PMI. La Infantil provided to the Court a Walmart shopper which advertises for sale Precious Moments fabric, along with other additional trimmings or fabrics and ruffles to coordinate with the Precious Moments fabrics.

PMI rejects La Infantil's position arguing that there is a vast difference between an individual purchasing the fabric and sewing baby products for one's[9] own personal and private use. PMI concedes this may be considered fair use under Section 107 of the Copyright Act as opposed to the defendants purchasing its fabric in bulk and designing and sewing the fabric into products sold in the marketplace for profit.

The fair use defense confers a privilege on people other than the copyright owner, "to use the copyrighted material in a reasonable manner, without his consent, notwithstanding

---

[9]PMI phraseology indicates that it believes only women purchase fabric and sew baby products.

the monopoly granted to the owner." *Marcus v. Rowley,* 695 F.2d 1171, 1174 (9th Cir. 1983)

(*citing Rosemont Enters, Inc. v. Random House, Inc.*, 366 F.2d 303, 306 (2d Cir. 1966). The

fair use doctrine is "an equitable rule of reason, which permits courts to avoid rigid

application of the copyright statute when, on occasion, it would stifle the very creativity

which the law is designed to foster." *Stewart v. Abend*, 495 U.S. 207, 236 (1990) (citations

omitted).

Section 107 of the Copyright Act contains the statutory provisions for fair use as

follows in pertinent part:

> Notwithstanding the provisions of sections 106 and 106A, the fair
> use of a copyrighted work, including such use by reproduction in
> copies or phonorecords or by any other means specified by that
> section, for purposes such as criticism, comment, news reporting,
> teaching (including multiple copies for classroom use),
> scholarship, or research, is not an infringement of copyright." 17
> U.S.C. § 107. Factors considered in determining fair use include:
> (1) the purpose and character of the use, including whether such
> use is of a commercial nature or is for nonprofit educational
> purposes; (2) the nature of the copyrighted work; (3) the amount
> and substantiality of the portion used in relation to the
> copyrighted work as a whole; and (4) the effect of the use upon
> the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

All the factors listed in 17 U.S.C. § 107 are "to be explored, and the results weighed

together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S.

569, 577 (1994). Since fair use is an affirmative defense, the proponent, in this case La

Infantil, carries the burden of proof in demonstrating fair use. *Campbell*, 510 U.S. at 590.

Inasmuch as the undersigned has determined that the products at issue are not derivative

works, the following analysis, although unnecessary, is provided in the alternative.

a. <u>Purpose and Character of Use</u>.  The first factor in determining fair use is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." *Campbell*, 510 U.S. at 578.  "The central purpose of this determination is to see . . . whether and to what extent the new work is 'transformative'"*Campbell*, 510 U.S. at 578.  The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use. *Id.*

The commercial or nonprofit educational character of a work is not conclusive, but is a fact to be "weighed along with other[s] in fair use decisions." *Campbell,* 510 U.S. at 585 (quoting *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 448-49 & n. 32 (1984)).  The fact that a work is commercial as opposed to nonprofit "is a separate factor that tends to weigh against a finding of fair use," but will not elevate it to hard presumptive significance. *Campbell,* 510 U.S. at 584-85.  "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc. v. National Enterprises,* 471 U.S. 539, 562 (1985) (*citing Roy Export Co. Establishment v. Columbia Broad. Sys., Inc.,* 503 F.Supp. 1137, 1144 (S.D.N.Y.1980), *aff'd,* 672 F.2d 1095 (1982)).

There is no dispute that the products at issue are commercial in nature and that the motive of the defendants was to profit from the products.  It is apparent, however, that the Precious Moments fabric was transformed from a shapeless piece of fabric purchased on the open market into a useful baby product.  This transformation lessens the significance of the commercialism and lends towards a finding of fair use.

b. <u>Nature of the Copyrighted Work</u>.  The next inquiry "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell,* 510 U.S. at 586.  Hence, when considering this factor, the courts distinguish between more "creative" works, such as musical compositions or works of fiction, and more information or functional works, such as bare factual compilations.  *See Campbell,* 510 U.S. at 586.

This factor clearly favors La Infantil.   To be sure, PMI's fabric contains creative artwork.  However, PMI used its copyright to manufacture fabric using the artwork; fabric which serves a functional purpose.  Indeed, the nature of the copyrighted work - here fabric - is to cut it into a pattern and sew it into an item.

c. <u>Amount and Substantiality of Portion Used</u>.  The third factor considered is the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3).   Here, the balance tips in PMI's favor.   Even a cursory glance at the products at issue leaves  no doubt that defendants used Precious Moments fabric and the same is the focal point of the items it produced.

d. <u>Effect of the Use Upon Potential Market for Copyrighted  Work</u>.  The last factor considered is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).  This factor requires assessment of both actual and potential market harm. *Campbell,* 510 U.S. at 590.  In evaluating this factor, a court must consider not only the primary market for the copyrighted work, but the current and potential market

for derivative works. *See Id.* at 568; *Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*, 964 F.2d 965, 971 (9th Cir.1992).

It is a safe generalization that copyright holders, as a class, wish to continue to sell the copyrighted work and may also wish to prepare or license derivative works. *Twin Peaks Prod., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1477 (2d Cir. 1993). Indeed, in the present case PMI has applied and received trademarks for baby bedding, namely sheets, blankets, comforters, bumper pads and baby washcloths, as well as baby rattles and mobiles (**Docket No. 181**, Ex. 20). While the baby products at issue will most certainly not interfere with PMI's primary market in the sale of its fabric, said products do interfere with the legitimate markets for products made with Precious Moments fabrics and produced by PMI. Accordingly, the undersigned concludes that the baby products produced by the defendants competes in markets in which PMI has a legitimate interest, and that the fourth factor at least slightly favors PMI.

In the undersigned's view, the nature of the copyrighted work (i.e. fabric to be sewn) lends toward a finding of fair use. Indeed, PMI sells its fabric and profits from the sale of said fabric. The undersigned finds untenable PMI's position that it can condition the use of its fabric once it is sold to the buying public. The fair use defense confers a privilege on people other than the copyright owner, "to use the copyrighted material in a reasonable manner. The reasonable use of fabric, is to sew it into articles. Having analyzed the four factors outlined above and keeping in mind that the fair use doctrine is an equitable rule of reason, the undersigned concludes that La Infantil has made a  showing of fair use, sufficient to defeat a motion for summary for summary judgment.

Civil No. 97-1635(JAG) _____ Page No. 24

## IV.  Conclusion

Based on the foregoing analysis, it is therefore **RECOMMENDED** that the motion for

summary judgment of Mueblería Andalucía be **GRANTED** (**Docket No. 173**).  It is further

**RECOMMENDED** that the Motion for Summary Judgment of Precious Moments, Inc. be

**DENIED** (**Docket No. 179**).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and

Rule 504.3 of the Local Rules of Court.  Any objections to the same must be specific and must

be filed with the Clerk of Court **within ten (10) days** of notice.  Rule 510.1, Local Rules of

Court; Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and

Recommendation waives the right to review by the District Court, and waives the right to

appeal the District Court's order.  *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir.

1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).  The parties are

advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge

does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit

consideration of issues not raised before the Magistrate-Judge.  *Paterson-Leitch v.*

*Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED**.

At San Juan, Puerto Rico, on this 29ᵗʰ day of May, 2002.

**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**